**BRENES LAW GROUP, P.C.**
Troy Brenes, CSBN: 249776
tbrenes@breneslawgroup.com
27141 Aliso Creek Rd, Ste. 270
Aliso Viejo, CA 92656
Phone: (949) 397-9360
Fax: (949) 607-4192

Attorney for Plaintiff, CATINA CRUZ

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATINA CRUZ,<br><br>      Plaintiff,<br><br>    vs.<br><br>C.R. BARD, INC., a corporation; BARD ACCESS SYSTEMS, INC., a corporation; and DOES 1 through 10 inclusive,<br><br>      Defendants. | Case No.: **'18CV2637 BEN AGS**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**(1) NEGLIGENCE.**<br>**(2) FAILURE TO WARN**<br>**(3) MANUFACTURING DEFECT**<br>**(4) BREACH OF EXPRESS WARRANTY**<br>**(5) BREACH OF IMPLIED WARRANTY**<br>**(6) FRAUDULENT CONCEALMENT**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMES NOW the Plaintiff, CATINA CRUZ, (who hereinafter shall be referred to as the "Plaintiff" or as "CRUZ"), by and through her undersigned counsel, and brings this Complaint against C.R. Bard, Inc.; Bard Access Systems, Inc.; and DOES 1 through 10 (collectively, the "Defendants"), and alleges as follows:

1.  This is an action for damages relating to Defendant's design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective device sold under the trade name of BardPort® Implanted Port with Groshong© Catheter (hereinafter "BardPort", or "Defective Device").

## PARTIES

– 1 –

2. Plaintiff, Catina Cruz, is an adult resident of San Diego Count, California and claims damages as set forth below.

3. Defendant C.R. Bard, In. ("Bard") is a New Jersey corporation with its principal place of business located in Murray Hill, New Jersey. Bard is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the BardPort.

4. Defendant Bard Access Systems, Inc. ("BAS") is a Utah corporation with its principal place of business located in Salt Lake City, Utah. BAS conducts business throughout the United States, including the State of California, and is a wholly owned subsidiary of C.R. Bard. BAS is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the BardPort.

5. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

### JURISDICTION AND VENUE

6. This Court has jurisdiction over all causes of action alleged in this Complaint pursuant to the California Constitution, Article VI, § 10.

7. Venue is proper in this Court, pursuant to *Code of Civil Procedure*, as the facts and circumstances leading to Plaintiff's physical injuries occurred in the county of San Diego, California. Plaintiff resided in San Diego County at the time the device was diagnosed as having fractured and caused him serious injury through invasive surgical procedure on or about November 18, 2018 to remove the failed device. Defendants also knowingly sold these devices into the state of California and employ sales representatives in throughout the state to market these devices to doctors.

### PRODUCT BACKGROUND

8. The BardPort® Implanted Port with Groshong© Catheter ("BardPort") is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by Defendants.

9. According to the BAS, the BardPort is a totally implantable vascular access device designed to

– 2 –

COMPLAINT

provide repeated access to the vascular system for the delivery of medication, intravenous fluids, parenteral nutrition solutions, and blood products.

10. The intended purpose of the BardPort is to make it easier to deliver medications directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted.

11. The BardPort is a system consisting of two primary components: an injection port and a silicone catheter.

12. The injection port has a raised center, or "septum," where the needle is inserted for delivery of the medication. The medication is carried from the port into the bloodstream through a small, flexible tube, called a catheter, that is inserted into a blood vessel.

13. The BardPort is "indicated for patient therapies requiring repeated access to the vascular system. The port system can be used for infusion of medications, I.V. fluids, parenteral nutrition solutions, blood products, and for the withdrawal of blood samples."

14. According to BAS marketing materials, "more BardPorts are placed worldwide than any other port."

15. According to BAS marketing materials, the Groshong© Catheter "[s]ilicone material offers superior biocompatibility and thromboresistance to improve indwelling catheter time."

16. When used as part of the BardPort system, the length of the Groshong© Catheter is 50 centimeters.

17. The BardPort is commonly used in patients with cancer to facilitate the administration of chemotherapy and/or radiation treatment.

18. According to BAS's Patient Information (available on their website, bardaccess.com—last accessed February 7, 2017), "the port is made from special medical grade materials designed for safe long-term use in the human body."

19. According to BAS's Patient Information (available on their website, bardaccess.com—last accessed November 5, 2018), the BardPort can be left implanted in the patient indefinitely.

20. Defendants obtained "clearance" to market these products under Section 510(k) of the Medical Device Amendments to the Food, Drug, and Cosmetic Act.

21. Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of

– 3 –

COMPLAINT

the device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, which the court quoted from:

> A manufacture can obtain an FDA findings of 'substantial equivalence' by submitting a premarket notification to the agency in accordance with section 510(k) of the [Food Drug and Cosmetic Act.] 21 U.S.C. § 360(k). A device found to be 'substantially equivalent' to a predicate device is said to be 'cleared' by the FDA (as opposed to "approved' by the agency under a PMA.

376. F.3d 163, 167 (3d. Cir. 2004). A pre-market notification submitted under 510(k) is thus entirely different from a PMA, which must include data sufficient to demonstrate that the produce involved is safe and effective.

22. In *Medtronic, Inc.* v. Lohr, the U.S. Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis…. The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in average of 20 hours …. As on commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification required little information, rarely elicits a negative response form the FDA, and gets processed quickly.

518 U.S. 470, 478-79 (1996).

23. Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse associated with the drug…and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling …." This obligation extends to post-market monitoring of adverse events/complaints.

24. At all times relevant, Defendants misrepresented the safety of the BardPort system, and negligently designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold the BardPort system as safe and effective device to be surgically implanted to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral

– 4 –

COMPLAINT

nutrition solutions, and blood products.

25. At all times relevant to this action, Defendants knew and had reason to know, that the BardPort was not safe for the patients for whom they were prescribed and implanted, because once implanted the device was prone to fracturing, migrating, perforating internal vasculature and otherwise malfunctioning.

26. At all times relevant to this action, Defendants knew and had reason to know that patients implanted with BardPorts had an increased risk of suffering life threatening injuries, including but not limited to: death; hemorrhage; cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart); cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; and perforations of tissue, vessels and organs, or the need for additional surgeries to remove the defective device.

27. Soon after the BardPort was introduced to market, which was years before Plaintiff was implanted with her device, Defendants began receiving large numbers of adverse event reports ("AERs") from health care providers reporting that the BardPort was fracturing post-implantation and that fractured pieces were migrating throughout the human body, including to the heart and lungs. Defendants also received large numbers of AERs reporting that BardPort was found to have perforated internal vasculature. These failures were often associated with reports of severe patient injuries such as:

a. hemorrhage;

b. cardiac/pericardial tamponade;

c. cardiac arrhythmia and other symptoms similar to myocardial infarction;

d. severe and persistent pain;

e. and perforations of tissue, vessels and organs; and

f. upon information and belief, even death.

28. Defendants were aware or should have been aware that the BardPort had a substantially higher failure rate than other similar products on the market, yet Defendants failed to warn consumers of this fact.

29. Defendants also intentionally concealed the severity of complications caused by the BardPort and the likelihood of these events occurring.

30. Rather than alter the design of the BardPort to make it safer or adequately warn physicians of

COMPLAINT

the dangers associated with the BardPort, Defendants continued to actively and aggressively market the BardPort as safe, despite their knowledge of numerous reports of catheter fracture and associated injuries.

31. Moreover, Defendants' warnings suggested that fracture of the device could only occur if the physician incorrectly placed the device such that "compression or pinch-off" was allowed to occur. In reality, however, Defendants knew internally these devices were fracturing and causing serious injuries due to defects in the design, manufacturing and lack of adequate warnings.

32. The conduct of Defendants, as alleged in this Complaint, constitutes willful, wanton, gross, and outrageous corporate conduct that demonstrates a conscious disregard for the safety of Plaintiff. Defendants had actual knowledge of the dangers presented by the BardPort System, yet consciously failed to act reasonably to:

a. Adequately Inform or warn Plaintiff, her prescribing physicians, or the public at large of these dangers;

b. Establish and maintain an adequate quality and post-market surveillance system; or

c. Recall the BardPort System from the market.

**SPECIFIC FACTUAL ALLEGATIONS AS TO CATINA CRUZ**

33. Dr. Jayashree Sinha, referred Plaintiff for placement of an IV catheter with infusion port for chemotherapy.

34. On or about October 29, 2013, Plaintiff underwent placement of the BardPort model number 0602830, lot number EUJ0566. The device was implanted by Dr. Albert Kwan.

35. Defendant, BAS directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold the BardPort that was implanted in Plaintiff.

36. Plaintiff underwent necessary chemotherapy to treat her rheumatoid arthritis.

37. On or about November 18, 2016 at UC San Diego, the BardPort was found to have fractured and migrated to Plaintiff's heart. Plaintiff underwent 9-hour surgery at UC San Diego to remove the defective device and to correct complications it had caused her.  Plaintiff was discharged from UC San Diego Health on November 29, 2016.

38. Due to the defective device, Plaintiff suffered damages and continues to suffer damages including,

– 6 –

but not limited to, undergoing an unnecessary major surgery, increased risk of future severe and permanent injuries, severe emotional distress, ongoing fear and anxiety from future injuries, including but not limited to, cardiac tamponade.

39. The Defendants concealed—and continue to conceal—their knowledge of the BardPort's unreasonably dangerous risks from Plaintiff and her physicians.

40. Numerous reports of BardPort catheter fracture or dislodgment in the absence of physician error were recorded and reported BAS prior to prior to the implantation of the BardPort in Plaintiff.

41. However, BAS continued to actively and aggressively market the BardPort as safe, despite knowledge of numerous reports of catheter fracture or dislodgment. BAS, with Bard's knowledge and consent, utilized marketing communications, including the Instruction for Use, and direct communications from sales representatives to Plaintiff's health care providers to intentionally misled her health care providers into believing these fractures were caused by physician error.

42. Defendants did not adequately warn Plaintiff or Plaintiff's physicians of the true quantitative or qualitative risk of catheter fracture or dislodgment associated with the BardPort.

43. Rather than alter the design of their product to make it safer or warn physicians of the dangers associated with the BardPort, the Defendants chose to continue their efforts to promote their defective product.

44. Plaintiff's physicians relied upon the representations, including the instructions for use distributed with the product implanted in Plaintiff, and advertisements to Plaintiff's detriment.

45. The Defendants knowingly concealed the dangerous propensity of this device to fracture and/or dislodge and cause foreign materials to be introduced into the Plaintiff's bloodstream. Defendants' further concealed their knowledge that these failures were occurring other than by doctor's causing pinch-off through placement, and that the failures were known to be causing serious injuries.

46. As a result of the failure of the Defendants' BardPort and the Defendants' wrongful conduct in designing, manufacturing, and marketing this defective product, Plaintiff and Plaintiff's physician were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of the Defendants' acts, omissions and misrepresentations.

47. The Defendants failed to conduct adequate and sufficient post-marketing surveillance after they

– 7 –

COMPLAINT

began marketing, advertising, distributing and selling the BardPort.

48. As a result of the Defendants' actions and inactions, Plaintiff was injured due to the use of the BardPort, which has caused and will continue to cause Plaintiff's various physical, mental, and emotional injuries and damages. Accordingly, Plaintiff seeks compensatory damages.

### FIRST CAUSE OF ACTION

### NEGLIGENCE

(Against Defendants Bard, BAS, and DOES 1 through 10, inclusive)

49. Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

50. The Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, selling and conducting post-market surveillance of the BardPort.

51. The Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

    a.  Failing to properly and thoroughly test the BardPort before releasing the device to market, and/or failing to implement feasible safety improvements;

    b.  Failing to properly and thoroughly analyze the data resulting from any pre-market testing of the BardPort;

    c.  Failing to conduct sufficient post-market testing and surveillance of the BardPort;

    d.  Designing, manufacturing, marketing, advertising, distributing, and selling the BardPort to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the BardPort and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

    e.  Failing to exercise due care when advertising and promoting the BardPort; and

    f.  Negligently continuing to manufacture, market, advertise, and distribute the BardPort after Defendants knew or should have known of its adverse effects.

52. As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and

– 8 –

COMPLAINT

lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

53.     In performing the foregoing acts, omissions, and misrepresentations, Defendants acted grossly negligent, fraudulently, and with malice so as to justify an award of punitive and/or exemplary damages.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

(Against Defendants Bard, BAS, and DOES 1-10)

54.     Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

55.     Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the BardPort, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

56.     At the time Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the device was defective and presented a substantial danger to users of the product when put to its intended and reasonably anticipated use, namely as an implanted port/catheter system to administer the medications. Defendants failed to adequately warn of the device's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the device.

57.     Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the BardPort that was implanted into Plaintiff that the BardPort posed a significant and higher risk than other similar devices of device failure and resulting serious injuries.

58.     Defendants further knew that these devices were fracturing and migrating for reasons other than "pinch-off" caused by the physician's initial placement of the device

59.     Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the BardPort; no reasonable health care provider, including Plaintiff's, or patient would have

used the device in the manner directed, had those facts been made known to the prescribing healthcare providers or the consumers of the device.

60.     The warnings, labels, and instructions provided by the Defendants at all time relevant to this action, are and were inaccurate, intentionally misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated with the device.

61.     The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

62.     The device, which was designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold into the stream of commerce by Defendants, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

63.     When Plaintiff was implanted with the device, Defendants Bard and BAS failed to provide adequate warnings, instructions, or labels regarding the severity and extent of health risks posed by the device, as discussed herein.

64.     Defendants intentionally underreported the number and nature of adverse events associated with fracture and migration of the devices to Plaintiff's health care providers, as well as the FDA.

65.     Neither Plaintiff nor her health care providers knew of the substantial danger associated with the intended and foreseeable use of the device as described herein.

66.     Plaintiff and her health care providers used BardPort in a normal, customary, intended, and foreseeable manner, namely as a surgically placed device used to make it easier to deliver medications directly into the patient's bloodstream. Moreover, Plaintiff's health care providers did not place the device incorrectly such that it caused the device to "pinch-off."

67.     Upon information and belief, the defective and dangerous condition of the device, including the one implanted into Plaintiff, existed at the time they were manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold by Defendants to distributors and/or healthcare professionals or organizations. Upon information and belief, the device implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

– 10 –

COMPLAINT

68.    Defendants' lack of sufficient warning and/or instructions was the direct and proximate cause of Plaintiff's serious physical injuries, and economic damages in an amount to be determined at trial. In other words, had Defendants provided adequate warnings, Plaintiff and her physicians would not have used the device.

## THIRD CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

(Against Defendants Bard, BAS, and DOES 1-10)

69.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

70.    Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the BardPort that was implanted into Plaintiff.

71.    The BardPort implanted in Plaintiff contained a manufacturing defect when it left Defendants' possession. The device differed from said Defendants' intended result and/or from other ostensibly identical unites of the same product line.

72.    Upon information and belief, the BardPort implanted in Plaintiff varied from its intended specifications.

73.    Plaintiff and her health care providers used the BardPort in a way that was reasonably foreseeable to Defendants.

74.    The device's manufacturing defect was the direct and proximate cause of Plaintiff's serious physical injuries and economic damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY

(Against Defendants Bard, BAS, and DOES 1-10)

75.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

76.    Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the BardPort was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was

– 11 –

adequately tested and fit for its intended use.

77. The BardPort does not conform to the Defendants' express representations because it is not reasonably safe, has numerous serious side effects, and causes severe and permanent injury.

78. At all relevant times, the BardPort did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

79. Plaintiff, her physicians, and the medical community reasonably relied upon the Defendants' express warranties for the BardPort.

80. At all relevant times, the BardPort was used on Plaintiff by Plaintiff's physicians for the purpose and in the manner intended by Defendants.

81. Plaintiff and Plaintiff's physicians, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

82. As a direct and proximate result of the breach of Defendants' express warranties, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

### FIFTH CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

(Against Defendants Bard, BAS, and DOES 1-10)

83. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein. as if fully set forth herein.

84. Defendants fraudulently concealed information with respect to the BardPort in the following particulars:

    a. Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the BardPort was safe and fraudulently withheld and concealed information about the substantial risks of using the BardPort;

    b. Defendants represented that the BardPort was safer than other alternative systems and

– 12 –

fraudulently concealed information which demonstrated that the BardPort was not safer than alternatives available on the market;

c.  Defendants concealed that it knew these devices were fracturing and migrating from causes other than the manner in which the implanting physician implanted the device; and

d.  That frequency of these failures and the severity of injuries were substantially worse than had been reported.

85.  The Defendants had sole access to material facts concerning the dangers and unreasonable risks of the BardPort.

86.  The concealment of information by the Defendants about the risks of the BardPort was intentional, and the representations made by Defendants were known by Defendants to be false.

87.  The concealment of information and the misrepresentations about the BardPort was made by the Defendants with the intent that Plaintiff's health care providers and Plaintiff rely upon them.

88.  Plaintiff and her physicians relied upon the representations and were unaware of the substantial risks of the BardPort which the Defendants concealed from the public, including Plaintiff and her physicians.

89.  As a direct and proximate result of the Defendants' actions, omissions and misrepresentations, Plaintiff has suffered, and will continue to suffer, severe physical pain and injuries which are permanent and lasting in nature, emotional distress, loss of the capacity for the enjoyment of life, medical and nursing expenses, surgical expenses, and economic loss as alleged herein. These damages have occurred in the past and will continue into the future.

90.  The Defendants acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing Defendants for their conduct, in an amount sufficiently large to be an example to others, and to deter this Defendants and others from engaging in similar conduct in the future.

91.  Had Defendants not concealed this information, neither Plaintiff's or her health care providers would have consented to using the device in Plaintiff.

## PUNITIVE DAMAGES

– 13 –

COMPLAINT

92.     Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare. Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff and her health care providers, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the BardPort. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the implantation of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the device, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same. Defendants further intentionally sought to mislead health care providers and patients, including Plaintiff and her health care providers, regarding the cause of fracture and migration failures of the device.

93.     Defendants had knowledge of, and were in possession of evidence demonstrating that, the BardPort caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of the device, notwithstanding Defendants' knowledge of the true serious side effects of the BardPort, Defendants failed to provide accurate information and warnings to the healthcare community that would have dissuaded physicians from surgically implanting the BardPort and consumers from agreeing to being implanted with the BardPort, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the BardPort.

94.      As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered, and will

continue to suffer, the injuries and damages described in this complaint.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory, special, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against each of the Defendants as follows:

    a.    Judgement be entered against all Defendant on all causes of action of this Complaint;

    b.    Plaintiff be awarded his full, fair, and complete recovery for all claims and causes of action relevant to this action;

    c.    Plaintiff be awarded general damages according to proof at the time of trial;

    d.    Plaintiff be awarded damages, including past, present, and future, medical expenses according to proof at the time of trial;

    e.    Plaintiff be awarded punitive damages according to proof at the time of trial;

    f.    Awarding pre-judgment and post-judgment interest to the Plaintiff;

    g.    Awarding the costs and the expenses of this litigation to the Plaintiff.

    h.    For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

Dated: November 16, 2018

BRENES LAW GROUP
A Professional Corporation

By _____
Troy Brenes

Attorney for Plaintiff

– 15 –

COMPLAINT